NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-CV-260-JBC

ABDEL ELTAYIB                                                                                    PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, et al.                                                           DEFENDANTS

Abdel Eltayib, who is currently incarcerated in Big Spring, Texas, has initiated a prisoner *pro se* civil rights action complaining of events occurring when he was incarcerated in the Federal Medical Center ("FMC"), in Lexington, Kentucky. He has been granted permission to proceed *in forma pauperis*.

The complaint is now before the court for screening. 28 U.S.C. § 1915; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). In the Court's screening, as with all pleadings submitted by *pro se* litigants, the pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations of the *pro se* litigant are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, the court must dismiss a case at any time if it determines the action is

frivolous, malicious, or fails to state a claim upon which the court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

## CLAIMS

Plaintiff alleges that the defendants (1) have been deliberately indifferent to his serious medical needs in violation of the U.S. Constitution's Eighth Amendment; (2) retaliated against him because he was excising his right to file grievances; and (3) deprived him of equal protection of the law guaranteed by the Constitution and conspired together to do so in violation of 42 U.S.C. § 1985(3), based on his being an alien.

## DEFENDANTS

As defendants, Plaintiff has named 28 persons, who are sued in their individual capacities. Most are Bureau of Prisons ("BOP") employees at the FMC-Lexington: (1) Warden Stephen M. Dewalt; (2) Associate Warden Edward Johnson, Jr.; (3) Associate Warden Rickey Pierce; (4) Associate Warden Gregory Kapusta; (5) Associate Warden Jason Terris; (6) Medical Director Dr. M. Growse; (7) Dr. M. Marrero; (8) Dr. Luis Morales; (9) Medical Records Technician D. Borders (10) K. Cox in Medical Records Department; (11) Physician Assistant ("PA") R. Mendoza; (12) P.A. M. Zagula; (13) P.A. Rob Williams; (14) P.A. Phillip Lafleur; (15) Nurse A. Carpenter; (16) Nurse T. Fanin; (17) Unit Manager Teri Ward; (18) Unit Manager Mr. Coleman; (19) Case Manager Tim Baker; (20) Corrections Counselor Sam Young; (21) Corrections Officer A. Patterson; (22) Corrections Officer D. Hatton; (23) Lt./Mr. Clark; (24) Trust Fund

Supervisor Mr. Clemens; and (25) Corrections Officer Mr. Rigsby. Additionally, Plaintiff names the BOP's (26) Mid-Atlantic Regional Director Kimberly White; (27) Regional Director Harley Lappan; and (28) Harrell Watts, Administrator of National Inmate Appeals. The plaintiff states that there are also John or Jane Doe defendants who will be identified later.

## RELIEF REQUESTED

Plaintiff seeks damages.

## FACTUAL ALLEGATIONS

Plaintiff has submitted a lengthy complaint, and in response to this court's earlier order, he has also now submitted the documents exchanged in the BOP administrative remedy process which he pursued. The latter submissions show that he exhausted the administrative procedures with regard to Remedy Nos. 464372, 468775, 472051, 475353, and 476937; and he apparently attempted to do so with Remedy Nos. 482481 and 483993, after he was transferred away from FMC-Lexington. The following is a summary or construction of the allegations contained in these submissions.

Plaintiff states that he was at FMC-Lexington from April of 1998 to February 20, 2008, and he gives a brief history of his medical problems during that time. He alleges that in 1997, he began "experiencing sharp pain on his right shoulder and neck that left him with numbness, atrophy in the right biceps, triceps and pectoral

muscles." After some diagnostic tests, in 1998, he had an "anterior cervical corpectomy and fusion surgery" on his back, to protect his spinal cord.

Plaintiff goes on to allege that in 2002, he began to have symptoms similar to those he had in 1997. Because of the results of an x-ray in June of 2003, an FMC-Lexington physical therapist ("PT") named Lief began to document weakness in his right arm and loss of muscle mass. In January of 2004, another PT performed a "NCV and EMG," but Eltayib was not informed of the results. The gravamen of the plaintiff's complaint is that

> from June 01, 2005 and until June 25, 2007, Eltayib had repeatedly reported to the clinic, complaining of symptoms similar to the ones he experienced prior to the 1998 surgery, but repeatedly he was denied the medical treatment. Only when Eltayib began to suffer from physical injuries on June 25, 2007 (muscular wasting, CTS and other injuries reported in the medical record), then the defendants began to provide some late inadequate medical treatment, and in the same time denied it.

Record No. 2 at 17.

Plaintiff chronicles his and the defendants' actions during the June 2005 - to - June 2007 period, mostly listing a date on which he presented himself to "sick call," describing the symptoms about which he complained at each visit, naming the medical personnel whom he saw each time, and then stating that the person(s) whom he saw "provided no medical treatment," in violation of the Eighth Amendment. This allegation is made about defendant Doctors Growse, Marrero, and Morales, and PA's Mendoza, Zagula, and Williams. Additionally, he makes the same charge against BOP

4

administrators, defendants Dewalt, Johnson, Lappan, White, and Watts for their actions or inaction during the relevant period.

Plaintiff Eltayib alleges that after being unsuccessful in obtaining proper medical attention for two years, in the summer of 2007, he began the first of his seven administrative remedies. In the first, No. 464372, he complained of not receiving appropriate treatment, and in the second, No. 468775, he complained that certain medical personnel had not taken his vital signs on one occasion, but later entered false vital signs to mislead about how serious his condition is, in retaliation for his filing the first administrative remedy.

Thereafter, the remainder of the documentary exhibits show that Eltayib filed administrative remedies complaining of additional 2007 incidents which purportedly showed the prison staff's intent to retaliate against him for his pursuing the administrative process about his medical care. The defendants allegedly delayed a consult with a neurologist; falsely told Plaintiff that a drug had already been ordered or could not be ordered so as to increase his suffering; did not give him enough care for his level of medical problems; did not disclose certain medical information to a private specialist so as to avoid the specialist's telling them to treat Eltayid; and arranged his transfer to another prison despite his on-going care and his not being medically cleared for such a transfer.

In these remaining administrative remedies, it was and is Plaintiff's theory that these were purposeful, retaliatory actions taken against him, in violation of his First

Amendment rights.  He claims that these actions were taken by medical defendants Growse, Marrero, and Williams; by the same administrators as listed above; and by additional administrators, *i.e.,* Ward, Coleman, Baker, Young, Patterson, Hatton, and Clark.  Further, Eltayib contends that all of the defendants conspired against him because he is an alien.

Plaintiff was transferred from FMC-Lexington on Feburary 20, 2008.  After he tried to finish his last two administrative remedies, he filed the instant cause of action for damages on June 9, 2008.

## DISCUSSION

The plaintiff is proceeding herein pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements:  that he has been deprived of rights secured by the Constitution or laws of the United States and that the defendants allegedly depriving him of those rights acted under color of federal law.  *Bivens*, 403 U.S. at 397.

With regard to the second of these requirements, the instant plaintiff has named only BOP employees as the defendants and they are alleged to have been acting as federal officials at all times.  Therefore, Plaintiff has made allegations satisfying the "color of federal law" component of *Bivens* claims.  In the broad sweep of allegations made by the plaintiff, the Court must now see whether the plaintiff has shown that the named federal defendants have deprived Reed of any constitutional rights.

6

Eltayib has alleged that all of the defendants have conspired to treat him differently from other prisoners because he is an alien. That is all he says. He gives no facts about himself or his citizenship; nor does he give any facts supporting this claim, no discriminatory words or deeds, on the part of any named defendant. An equal protection claim which is not supported by factual allegations is dismissable as being only conclusory. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971). Because the instant plaintiff has failed to state an equal protection claim, either Constitutional or statutory, the claim will be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

With regard to the Plaintiff's Eighth and First Amendment claims, he does give allegations in support of these claims. However, again he paints with an impermissibly broad brush. In presenting his Eighth Amendment claim, he names not only medical personnel as having exhibited deliberate indifference to his serious medical needs, but administrators who had no medical responsibilities to him and are not alleged to have taken any actions against him. Jason Terris, Gregory Kapusta, Edward Johnson, and Rickey Pierce are described as FMC-Lexington associate wardens but the plaintiff alleges no illegal actions attributable to them in his medical care. The Eighth Amendment allegations about these four defendants do not set forth the factual basis of the claim in a manner that gives them proper notice of what they did (or failed to do) regarding his medical care. Neither the defendants nor this court is required to "conjure up unpled allegations." *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.), *cert.*

7

*denied*, 464 U.S. 986 (1983). Because they are not alleged to be personally involved in any complained-of action or inaction, they are entitled to dismissal. *See Taylor v. Mich. Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995).

Nor can the plaintiff recover against these four defendants on a *respondeat superior* theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981); *Williams*, 837 F.2d at 308; *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984). "[T]he law is clear that liability of supervisory personnel must be based on more than merely the right to control." *Hayes v. Jefferson County, Kentucky*, 668 F.2d 869, 872 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d at 421.

In order to find supervisors liable for damages, a plaintiff must allege that the supervisors condoned, encouraged or participated in the alleged misconduct. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d at 421); *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989). As there are no such allegations against defendants Jason Terris, Gregory Kapusta, and Edward Johnson, they are entitled to dismissal from defending the Eighth Amendment claim.

With regard to the plaintiff's third claim, he has alleged that the same four associate wardens violated his First Amendment rights by taking actions against him in retaliation for his filing for administrative remedies. Again, Eltayid makes no specific allegations with regard to defendants Jason Terris, Gregory Kapusta, and Edward Johnson, and they will, therefore, not required to answer this claim either. They are

entitled to dismissal from this lawsuit as they were not personally involved in any complained-of action and cannot be held liable under *respondeat superior*. Additionally, the sole allegation against Rickey Pierce in support of plaintiff's First Amendment claim is that he gave the plaintiff "intimidating" looks upon occasion. This falls far short of stating a Constitutional claim against him, and therefore, he, too, will be dismissed.

Other administrators are also entitled to dismissal from this lawsuit. The BOP officials outside FMC-Lexington, *i.e.*, Harley Lappan, Kimberly White, and Harrell Watts, are administrators whose participation in the plaintiff's claims was, at most, denying his administrative remedy appeals. Such limited participation is not a basis for liability. *Shehee v. Luttrell*, 199 F.3d 295, 299-300 (1999), *cert. denied*, 530 U.S. 1264 (2000).

With a few exceptions, the plaintiff's allegations against the rest of the defendants are minimal but enough to avoid a *sua sponte* dismissal; there also is a question as to plaintiff's exhaustion of the BOP administrative remedies, an issue which is not appropriate to resolve at this stage. *See Jones v. Bock*, 127 S.Ct. 910 (2007). Therefore, summons will issue for the remaining defendants. The plaintiff is advised of one matter which is appropriate to raise at this time. Federal Rule of Civil Procedure 4(m) provides as follows:

> Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But

>if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed.R.Civ.P. 4(m)(2007). Plaintiff is on notice that if any John Doe defendants are not named and served within 120 days, then the claims against said named defendant or John Doe defendants shall be dismissed pursuant to the terms of Federal Rule of Civil Procedure 4(m).

Finally, because Plaintiff was granted pauper status, based on the information in his recent affidavit, an Officer of the Court will serve process on his behalf. *See* FED. R. CIV. P. 4(c)(2) and 28 U.S.C. § 1915(d).

## CONCLUSION

In light of the foregoing, **IT IS ORDERED** as follows:

(1) The following are dismissed, *sua sponte*, without prejudice: (a) plaintiff's claims under the equal protection portion of the Constitution and conspiracy to violate said equal protection rights; (b) defendants Harley Lappan, Kimberly White, Harrell Watts, Jason Terris, Gregory Kapusta, Edward Johnson, and Rickey Pierce.

(2) The Clerk of the Court is directed to prepare summons for personal service on the following defendants at FMC-Lexington, in their individual capacities only: (a) Stephen M. Dewalt; (b) Medical Director Dr. M. Growse; (c) Dr. M. Marrero; (d) Dr. Luis Morales; (e) Medical Records Technician D. Borders (f) K. Cox in Medical Records Department; (g) Physician Assistant R. Mendoza; (h) P.A. M. Zagula; (i) P.A. Rob Williams; (j) P.A. Phillip Lafleur; (k) Nurse A. Carpenter; (l) Nurse T. Fanin; (m) Unit

10

Manager Teri Ward; (n) Unit Manager Mr. Coleman; (o) Case Manager Tim Baker; (p) Corrections Counselor Sam Young; (q) Corrections Officer A. Patterson; (r) Corrections Officer D. Hatton; (s) Lt./Mr. Clark; (t) Trust Fund Supervisor Mr. Clemens; and (u) Corrections Officer Mr. Rigsby.

(3) The Clerk shall also prepare as many copies of the complaint [Record No. 2] as there are summonses and any required United States Marshals Service ("USMS") Form 285. If insufficient information exists to sufficiently or effectively complete any summons or USMS Form 285 regarding any defendant, the Clerk shall promptly make a Clerk's entry on the docket stating why the Clerk cannot fill out the summons or USMS Form 285 or any other documents necessary to effectuate service.

Additionally, the Clerk of the Court shall prepare three (3) packets of documents, each packet consisting of (a) copies of all of the summons; (b) a copy of the complaint; and (c) a copy of this order. The Clerk shall mark each packet for service by certified or registered mail, return receipt requested, as follows: one packet addressed to the civil process clerk at the Office of the United States Attorney for the Eastern District of Kentucky; one to the Office of the Attorney General of the United States, in Washington, D.C.; and one to the Director of the Federal Bureau of Prisons.

(4) After the Lexington Clerk's office has prepared the summonses, USMS Forms 285, complaint copies, copies of this order, and/or any other documents necessary to effectuate service, a Deputy Clerk in the Lexington Clerk's office shall

hand-deliver said documents to the United States Marshal's office in Lexington, Kentucky.

(5) The Lexington Deputy Clerk making the delivery of the summons and copies to the United States Marshal Service's office shall obtain from the Marshal a receipt for the hand-delivered documents, which receipt shall be entered into the instant record by the Clerk.

(6) The United States Marshal shall serve a summons, complaint copy, and copy of this order on each defendant named above in paragraph (2).

Additionally, the USMS shall serve the packets of copies described in paragraph (3) to the three addressees by personal service or by certified or registered mail, return receipt requested, at the option of the Marshals Service.

(7) The USMS Office is responsible for ensuring that each defendant is personally served with process. In the event that an attempt at personal service upon any defendant is unsuccessful, the USMS Office shall make further attempts or pursue other such information as is necessary to ensure successful service.

(8) Within 40 days of the date of entry of this Order, the USM Office shall send a Service Report to the Lexington Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished.

    a.    For each defendant to be personally served, the Service Report shall indicate:
        i.    that the defendant was successfully served personally; or
        ii.    a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

12

   b. For each addressee who was to receive a packet of copies to be served by registered or certified mail, the Service Report shall include:
    i. the green mail receipt card showing proof of service; or
    ii. a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

(9) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. ***Failure to notify the Clerk of any address change may result in a dismissal of this case.***

(10) For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. ***The Court will disregard any notice or motion which does not include this certification***.

(11) The Plaintiff must communicate with the Court *solely* through notices or motions filed with the Clerk's Office. ***The Court will disregard correspondence sent directly to the Judge's chambers.***

Signed on  August 20, 2008



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY