**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-260-JBC

ABDEL ELTAYIB                                                                    PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

STEPHEN DEWALT, Warden, et al.                                    DEFENDANTS

**** **** **** ****

This matter is before the court on the parties' several motions, including cross-motions for summary judgment. The court will grant the defendants' motion because the plaintiff has failed to present claims of constitutional dimension or negligence under Kentucky law.

**BACKGROUND**

On June 9, 2008, Abdel Eltayib, who is incarcerated in Big Spring, Texas, initiated this civil rights action pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971). He complained of certain circumstances, primarily the quality of his medical care by Bureau of Prisons ("BOP") personnel, when he was previously confined in the Federal Medical Center ("FMC"), a federal prison in Lexington, Kentucky. He sought damages from twenty-eight named defendants and other John and/or Jane Does.

Eltayib was at FMC-Lexington from April of 1998 to February 20, 2008. He alleges

that in 1997, he began "experiencing sharp pain on his right shoulder and neck that left him with numbness, atrophy in the right biceps, triceps and pectoral muscles." After some diagnostic tests, in 1998, he had an "anterior cervical corpectomy and fusion surgery" on his back, to protect his spinal cord.

More recently, in 2002, Eltayib allegedly began to have symptoms similar to those he had in 1997 prior to the surgery. Because of this and the results of an x-ray in June of 2003, an FMC-Lexington physical therapist ("PT") named Lief began to document weakness in the plaintiff's right arm and loss of muscle mass. In January of 2004, another PT performed an "NCV and EMG," but Eltayib was not informed of the results. The gravamen of the plaintiff's complaint is that beginning

> . . . June 01, 2005 and until June 25, 2007, Eltayib had repeatedly reported to the clinic, complaining of symptoms similar to the ones he experienced prior to the 1998 surgery, but repeatedly he was denied the medical treatment. Only when Eltayib began to suffer from physical injuries on June 25, 2007 (muscular wasting, CTS and other injuries reported in the medical record), then the defendants began to provide some late inadequate medical treatment, and in the same time denied it.

Record No. 2 at 17.

The plaintiff broadly describes his and the defendants' actions from 2002 and then details his treatment during his last months at FMC-Lexington, from June of 2007 to February of 2008. His allegations are made by listing dates on which he purportedly sought medical attention, describing the symptoms about which he complained at each visit, naming the medical personnel whom he saw each time, and then stating that the person(s) whom he saw "provided no medical treatment," in violation of the Eighth Amendment.

Eltayib alleges that after failing to obtain proper medical attention for that two-year

2

period, in the summer of 2007, he began the first of his several administrative remedies on the topic of his medical care.  Besides accusing the BOP staff of being deliberately indifferent to his serious medical needs, the Plaintiff has also contended that the defendants retaliated against him for pursuing the administrative process about his medical care and conspired against him because he is an alien.

The allegedly deficient medical care included the defendants' delaying a consultation with a neurologist; falsely telling the plaintiff that a drug could not be ordered so as to increase and justify his suffering; failing to supply appropriate care for his level of medical problems; hiding certain medical information from a consulting specialist so as to avoid the specialist's possible recommendation to treat him; and arranging his transfer to another prison despite his on-going medical care.

Exhibits show that the plaintiff exhausted BOP administrative remedies numbered 464372, 468775, 472051, 475353, and 476937; and he apparently attempted to exhaust Remedy Nos. 482481 and 483993 from Texas, after he was transferred away from FMC-Lexington on February 20, 2008.  Two months later, he filed a negligence claim under the Federal Tort Claims Act,  ("FTCA"), Title 28 U.S.C. §§ 1346(b), 2671-2680, which was pending when he filed the instant cause of action but has now been denied.

Upon screening the complaint, this court issued an order summarizing the foregoing claims, dismissing the plaintiff's conspiracy and equal protection claims, and also dismissing several of the named defendants.  Additionally, the court issued summons to

3

the remaining named defendants,[1] to respond to his claims of inadequate medical care and retaliation.

Since that time, the parties have been granted extensions of time, have submitted dispositive motions, and have also filed miscellaneous motions.

## THE PARTIES' DISPOSITIVE MOTIONS

The defendants urge dismissal of claims arising in 1997 to early 2007 as time-barred by Kentucky's one-year statute of limitations.  They admit that the medical claims have been exhausted in the administrative process.  However, they contend that all other claims, including claims of interference with his telephone reception, wrongful transfer, extreme temperature in his cell, and a medical trip via a new and unknown route, were not exhausted and must, therefore, be dismissed.

The defendants also urge dismissal of the case for the plaintiff's failure to provide the specificity required by Rule 8 (a)(2) and allegations of personal involvement necessary for civil rights liability to attach.  Additionally, they seek dismissal of the official capacity claims because of the federal government's sovereign immunity and the dismissal of the Public Health Service ("PHS") defendants, LaFleur and Zagula, who are immune because of a statutory grant of immunity.

The defendants contend that the plaintiff has not met the pleading requirements of

---

[1]  The court dismissed Defendants Harley Lappan, Kimberly White, Harrell Watts, Jason Terris, Gregory Kapusta, Edward Johnson, and Rickey Pierce.  Summons was ordered to issue for the remaining defenants, FMC-Lexington's (a) Warden Stephen M. Dewalt; (b) Medical Director Dr. M. Growse; (c) Dr. M. Marrero; (d) Dr. Luis Morales; (e) Medical Records Technician D. Borders (f) K. Cox in Medical Records Department; (g) Physician Assistant R. Mendoza, (h) P.A. M. Zagula; (i) P.A. Rob Williams; (j) P.A. Phillip Lafleur; (k) Nurse A. Carpenter; (l) Nurse T. Fanin; (m) Unit Manager Teri Ward; (n)  Unit Manager Mr. Coleman; (o) Case Manager Tim Baker; (p) Corrections Counselor Sam Young; (q) Corrections Officer A. Patterson; (r) Corrections Officer D. Hatton; (s) Lt./Mr. Clark; (t) Trust Fund Supervisor Mr. Clemens; and (u) Corrections Officer Mr. Rigsby.

either an Eighth or First Amendment claim.  With regard to the Eighth Amendment claim, they argue that the plaintiff has not met either the objective or subjective component necessary to prove deliberate indifference to his serious medical needs consistent with the Supreme Court's holding in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

With regard to the First Amendment retaliation claim, *i.e.*, that Eltayib was retaliated against for pursuing his administrative remedies about the medical care issues, the defendants deny the allegation.  They also contend that he has not stated a cognizable claim, as grievances are not a right of constitutional magnitude, failing to satisfy the requirements of *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Finally, the defendants also rely on the defense of qualified immunity.

The plaintiff also moved for summary judgment, correctly citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, the remainder of his  motion and his "Statement of Undisputed Facts," consists of paragraphs repeating his original factual allegations and then repeatedly stating that defendants failed to controvert every word of his allegations.

## DISCUSSION

### 1. Jurisdiction.

The court must address two jurisdictional issues.  First, federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell,* 463 U.S. 206, 212 (1983). The United States has not waived its sovereign immunity to monetary damages for constitutional torts.  *Clark v. Library of Congress*, 750 F.2d 89, 104 (D.C. Cir. 1984).

5

A plaintiff may not avoid the bar of sovereign immunity simply by naming individual federal officers of the United States. *Ecclesiastical Order of the Ism of Am v. Chasin*, 845 F.2d 113, 115 (6th Cir. 1988) (citing *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982)). When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975). Therefore, the official-capacity claims in this case will be dismissed with prejudice.

Federal jurisdiction also does not exist under 28 U.S.C. § 1331 for *Bivens* claims against federal officers for damages in their individual capacities – unless the conduct rises to the level of a constitutional violation. *Davis v. Passman,* 442 U.S. 228 (1979). Therefore, the court will examine the allegations against each defendant in his or her individual capacity to see whether any purported conduct rises to the level of a constitutional violation. A defendant whose conduct does not amount to a constitutional violation will be entitled to dismissal.

Secondly, the statute of limitations bars the plaintiff's older claims. *Bivens* claims in Kentucky have a one-year statute of limitations. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)) (§ 1983 actions in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a)). The court lacks jurisdiction to grant relief on any of the plaintiff's claims arising before early 2007.

**2. Remaining Timely Claims.**

As to the plaintiff's remaining timely claims, a civil rights action under 28 U.S.C. § 1331 requires two essential elements:  The plaintiff must prove, first, that he has been deprived of rights secured by the U.S. Constitution or laws of the United States and, second, that the defendants allegedly depriving him of the rights acted under color of federal law.  *Bivens*, 403 U.S. at 397.  As all of the defendants here are federal employees, the second component is met.  However, the plaintiff has not met  the first requirement.

### Eighth Amendment Claims

Eltayib first claims that the individual defendants exhibited deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.  "In order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs."  *Estelle v. Gamble*, 429 U.S. at 106.  Therefore, a prisoner must show both "deliberate indifference" and "serious medical needs."  *Id.*

The United States Bureau of Prisons has a duty to provide adequate medical care to a prisoner.  18 U.S.C. § 4042; *see also Lopez v. United States*, 2005 WL 2076593, 14 (E.D.N.Y. 2005); *Yosuf v. United States*, 642 F.Supp. 415, 427 (M.D.Pa.1986).  If federal employees do not provide that adequate medical care, they can be sued individually for damages if they were deliberately indifferent to the prisoner's serious medical needs in violation of the U.S. Constitution (*Estelle v. Gamble*, 429 U.S. at 104), or the government can be sued if the employees were negligent in the care provided (*United States v. Muniz*, 429 U.S. 97, 104 (1976)).

The plaintiff arrived at FMC-Lexington more than 10 years ago with "a documented

diagnosis of Hypertension (HTN), a history of cervical spine issues . . . , cervical stenosis and cervicalgia." Further, in 1998, Plaintiff underwent an "anterior cervical corpectory and fusion surgery." He did not present a disciplinary or other problem for BOP officials until 2007. Eltayib alleges[2] that he did so then only after purportedly spending two years, from 2005 to 2007, asking for a neurology consultation, but receiving none. In June of 2007, he began to assert dissatisfaction with his care and his desire for a consult. In August, Eltayib addressed these issues via the first of his several formal complaints through BOP administrative remedy system. Six months later, he left FMC-Lexington.

Assuming the plaintiff's medical needs to be serious for the purpose of considering the current motions, the court focuses on whether he has shown the requisite culpable state of mind on the part of the named defendants. The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994) (citing *Farmer v. Brennan*, 114 S. Ct. 1970 (1994)). Liability attaches only when the plaintiff "demonstrate[s] deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citation omitted).

However, when a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a

---

[2] The court views the facts in the light most favorable to the plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The plaintiff has failed to meet the Constitutional standards so as to proceed with his Eighth Amendment claim, as he has failed to show that any defendant was deliberately indifferent to his medical needs. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause").

BOP medical personnel regularly treated the plaintiff for his complaints. When he complained of shoulder pain in BOP Remedy Number 464372, he was seen by a neurologist and had x-rays taken within the month. Although he had to wait two months for the other tests and results, he got them within a short time.

In Number 468775, Eltayib complained that on September 14, 2007, the medical department did not take his vital signs and falsified his record to show that they had done so. He claimed that retaliation for his filing of the first administrative remedy was the motive. The defendants' administrative documents show that the BOP conducted an investigation, found no evidence of falsity in his medical records, but treated the plaintiff appropriately nonetheless. Some medications were stopped, the amount of Naproxen for pain was increased, and Eltayib was given instructions on his diet.

Each later complaint about Plaintiff's medical treatment is similar. In Number 472051, filed on November 5, 2007, the plaintiff complained that he needed to see the neurologist immediately. In the administrative response, the warden recited the medical attention which he had recently received, *i.e.*, from the neurologist, a pain management

9

specialist, a dietitian, his primary physician, PA's, and a physical therapist for eight weeks, three times per week.   He would see the neurologist within days; of the tests the neurologist ordered, the x-rays were conducted within the month, the EMG on September 11th, and the MRI in November.  Plaintiff has presented no evidence that this time frame was inordinate or harmful or that these approaches were medically inadequate or improper.

In Remedy Number 475353, filed in December, one week after the BOP sought permission to transfer Plaintiff to another appropriate level facility, Eltayib complained of the plan to transfer him to another prison, wanted a change in his assigned level of care, and charged that the staff was arranging the transfer in retaliation for his medical complaints.  He sought proper medical treatment, castigation of the staff, or immediate release.  The BOP responded that "we do not find any indication of staff retaliating against you in any manner, nor have you provided any."

In Number 476937, Plaintiff claimed that when he requested copies of his medical records, 9 pages were withheld, and he objected to a staff note in the records.  The note stated that he had been observed casually and easily carrying things over his right shoulder, even though he had complained of pain in that shoulder.  In Number 483993, he complained of not getting the medication, Lyrica, which his doctor had ordered.  He claims that this was in retaliation for his administrative complaints, while the defendants maintain that they tried to get it but the BOP does not carry it, so they had to use something else.  And in 482481,[3] he claimed that his complaints were taken lightly and that personnel

_____

[3]  The parties both submit evidence to support their respective positions on whether Remedy Numbers 483993 and 482481, were properly exhausted once Plaintiff had been transferred.  The court, however, finds it unnecessary to wade in to this debate, as the facts are viewed in the favor of the plaintiff at this time, and even under that standard, this matter will be dismissed on the merits.

considered him to be faking.

The warden's response to Number 472051, is typical of the BOP's administrative responses. The warden first set out Eltayib's past medical history and then focused on the recent past:

> On June 27, 2007, you reported to sick call with the complaint of losing muscle mass in your right shoulder, right arm, and the right side of your chest. You also had complaints of numbness in the fingers of your right hand. The clinician ordered an x-ray of your cervical spine, an order for consultation with the neurologist was written, he documented the necessity to confer with your primary physician in reference to your complaints, and he discussed with you the importance of continuing your physical therapy appointments and exercises. He then scheduled you for a follow up with him in July. At the end of this sick call visit, you expressed your understanding and you had no further concerns. On June 29, 2007, the requested x-ray of your cervical spine was conducted which showed surgical changes of fusion of areas D4 through C7, mild disc narrowing at C3 and C4 increasing since your previous exam, and a documented suspected fracture of a C7 vertebral body screw was noted. In regard to follow up, your clinician saw you on July 3, 2007, to discuss your x-ray results and your case with your primary physician. Based on this discussion, as well as his findings, he increased your pain medications. He then wrote a consultation for Pain Management and discussed with you all of the above mentioned changes. At the end of this follow up visit, you voiced your understanding and had no further concerns.
>
> On July 11, 2007, you were seen by the neurologist who evaluated you for neck pain, arm pain and arm numbness . . . .
>
> On August 24, 2007 . . . .

Record No. 40 at 40-5, dated November 9, 2007. After three more paragraphs reciting the care which the plaintiff had been given, the warden concluded that "[t]here is no evidence to support your allegation you were denied proper medical treatment, any delays with your medical treatment, or any intentional interference of your medical treatment."

In every administrative remedy, the BOP responded to Eltayib with a recitation of care which had been provided him. What is missing in this case is Eltayib's evidence:

11

evidence of deliberate indifference in the statements of the defendants, evidence of their having a retaliatory motive, evidence of any purposeful or inordinate delay, evidence that the BOP personnel who are named as defendants ignored or refused to hear this prisoner's medical complaints.  If there was anything improper in his care, the plaintiff has not suggested that he has obtained an expert who will explain what was proper and not done; will contrast that with what was improper and done; and will show how the plaintiff's condition was caused or exacerbated by such care.

This is a classic case of a difference of opinion between a patient and his medical-care provider.  Eltayib has claimed that for his several medical complaints, he should have received more medical attention, "proper" treatment, the medication which his outside expert ordered, and an outside neurological consultation within a shorter period of time. Although he repeatedly claimed in his complaint that he received "no" treatment, Plaintiff's submissions, including medical records, show that he was not ignored.  To the contrary, he was continually provided medical treatment in those last months, although it was not what and when he wanted.  *See Westlake*, 537 F.2d at 857.

This is not, however, just a swearing contest which turns on credibility and must be decided by a jury.  The court must grant summary judgment if there is "no genuine issue as to any material fact."  Fed.R.Civ.P. 56(c).  Only disputes over facts that might affect the outcome of the suit under the governing law are such disputes, and factual disputes which are irrelevant or unnecessary will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Obvious examples of an erroneous view of materiality appear repeatedly in the plaintiff's arguments.  He offers details in Defendant Dr. Marrero's declaration which differ

12

from the note she put in his medical file about his being seen carrying a bag of items down the hall.  On the occasion of October 25, 2007, he points out, she did not mention the presence of other staff and she describes two different ways that he was carrying his sack of goods on his right side.  Further, the plaintiff produces a copy of his commissary receipt of that date showing what items he bought so as to demonstrate that the load did not exceed 15 pounds in weight.

While these and other "facts" may be in dispute, they are not material to the plaintiff's claim.  Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, as the culpable state of mind, "deliberate indifference," in this case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex Corporation v. Catrett,* 477 U.S. 317, 323 (1986).

Rule 56 requires the instant plaintiff to present "significant probative" evidence that supports his complaint and demonstrates the existence of a genuine issue of material fact.  *Id.,* at 324.  This means sufficient evidence from which a jury could reasonably find for him.  *Anderson*, 477 U.S. at 252.  This court must then determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Celotex*, 477 U.S. at 251-52.

In this case, the defendants have shown that there is a lack of evidence of deliberate indifference on the part of any defendant, an essential element of an Eighth Amendment claim.  This plaintiff has responded to the defendants' motion for summary judgment with details, more arguments, and disputes about "facts," but he has not carried

his evidentiary burden to controvert the defendants' evidence. The instant plaintiff's responses fall short of the mark, as he has offered no evidence that any defendant was deliberately indifferent to his serious medical needs.

For example, in his response to the defendants' motion, Eltayib retorted that the defendants "failed to prove that the vital signs were not fabricated" and "failed to show that they didn't commit retaliatory acts." However, disproving the plaintiff's allegations was not the defendants' burden at that time. The defendants having carried their burden of showing the lack of an essential element of his claim, it was the plaintiff's burden to offer evidence to support his claims of poor care, fabricated records, retaliatory acts, etc., and he simply did not offer any evidence.

Additionally, to the extent the plaintiff claims a worsening of his condition(s) over the six months at issue, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. . . ." *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001)(quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir.1994)); *Loggins v. Franklin County, Ohio*, 2007 WL 627861 at *5. This the plaintiff has not done.

Because the plaintiff has failed to produce evidence to substantiate his claims in the face of the defendants' properly supported motion for summary judgment, there is no genuine issue of material fact going to the defendants' deliberate indifference to Eltayib's serious medical needs. Thus, the defendants are entitled to a judgment as a matter of law.[4]

---

[4] Although the defendants filed this motion in the alternative, both to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and for summary judgment pursuant to

A court will not second-guess the judgment of medical professionals who make diagnoses and decisions about treatment.  *Estelle*, 429 U.S. at 107.  Rather, a court must

> distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake v. Lucas*, 537 F.2d at 860.  Accordingly, summary judgment will be entered in favor of the defendants on the plaintiff's Eighth Amendment medical-care claims.

### The FTCA Claim

On April 15, 2008, two months after his transfer away from FMC-Lexington, the instant plaintiff also filed a negligence claim under the Federal Tort Claims Act,  ("FTCA"), Title 28 U.S.C. §§ 1346(b), 2671-2680.  That claim was denied on July 17, 2008.

The FTCA waives the sovereign immunity of the United States government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for the negligence of its employees.  In relevant part, the FTCA authorizes suits against the government to recover damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Congress restricted the FTCA to circumstances in which "a private individual [would be liable] under like circumstances." 28 U.S.C. § 2674.  It provides the

---

Fed.R.Civ.P 56, the court construes it as a motion for summary judgment, as it must, because it has considered the declarations and medical records.  *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999).

exclusive remedy for tort actions against the federal government, its agencies and employees. *Ascot Dinner Theatre v. Small Business Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989).

Federal prisoners are included as possible plaintiffs in FTCA cases. *United States v. Muniz,* 374 U.S. 150 (1963). *See also* 28 U.S.C. § 1346(b)(1); *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004). In the FTCA's administrative process, Eltayib claimed that he "was at high risk for heat-related injury, had been subjected to the risk of death, physical pain, discomfort, suffering and mental anguish due to the BOP employees' negligence by exposing him to high heat and humidity conditions" at FMC-Lexington in the summers of 2006 and 2007. He specifically alleged that he was not provided "with suitable quarters as required by 18 USC Section 4042(a)(2)."

In the letter denying the FTCA claim, the BOP representative reports that he interviewed one of the plaintiff's FMC-Lexington care providers. That person remembered no air-conditioning issue arising during his treatment of Eltayib. He also checked the plaintiff's medical records and found no heat-related injuries or complications which would have met the criteria for the plaintiff to reside in an air-conditioned building.

"As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred. 28 U.S.C. §§ 1346(b) § 2674; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991) . . . ." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). This extends to claims of medical negligence. See *Vance v. U.S.,* 90 F.3d 1145, 1148 (6th Cir.1996); *Sellers v. U.S.,* 870 F.2d 1098, 1101 (6th Cir.1989);

16

and *see Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 478 (1994) (In a federal tort claims action it is the law of the state where the events occurred that controls).

As the complained-of events in this case took place in Kentucky, the court must look to Kentucky law.  In Kentucky, a *prima facie* case of medical negligence must include proof of the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence.  *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Ferguson v. United States Army*, 938 F.2d 55 (6th Cir. 1991) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 143 (Ky. 1980)); *M&T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740 (Ky. 1975).

As with his Constitutional medical claim, Eltayib has not provided any evidence of what the duty of care was for his conditions; evidence that any federal employee breached that duty of care; or any evidence that the Plaintiff sustained an injury as a result of spending two summers in un-air-conditioned living spaces in Lexington, Kentucky.  Plaintiff has attached medical records, but they cannot speak for themselves.

Expert testimony is generally required to show that a medical care provider failed to conform to the applicable standard of care and caused injury to the plaintiff.  *See Vance by and through Hammons v. United States,* 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *Perkins v. Hausladen,* 828 S.W.2d 652, 655-56 (Ky.1992)); *Jarboe v. Harking,* 397 S.W.2d 775, 777-78 (Ky.1965).  The expert's opinion must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.,* 50 S.W.3d 210, 213 (Ky.App. 2001).

Kentucky recognizes the common-knowledge exception to the need for an expert

and will not require an expert "where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts."  However, proper treatments for the medical conditions afflicting this plaintiff are not common knowledge, and this exception is inapplicable here.  *Jarboe*, 397 S.W. 2d at 778.

The plaintiff needed, but failed, to present any expert evidence, as it was incumbent on him to do.  Therefore, the defendants are entitled to summary judgment on the negligence claim, as well as on the Eighth Amendment claim.

### First Amendment Claims

The plaintiff also argues that the defendants retaliated against him for exercising his right to file grievances, which he characterizes as a claim under the First Amendment.  A First Amendment retaliation claim requires evidence that: (1) the plaintiff engaged in conduct protected by the First Amendment; (2) the government actor took an adverse action against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the fact that the plaintiff engaged in the protected conduct. *See Thaddeus-X v. Blatter,* 175 F.3d at 394.

Utilizing a prison grievance procedure constitutes protected conduct implicating the First Amendment in this circuit.  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.").  However, as to the second component for a First Amendment claim, *i.e.*, the adverse action imposed on the prisoner, a transfer from one federal prison to another is not an adverse action that would deter a person of ordinary firmness from

18

continuing to engage in that conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir.2005) ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct.") (citing *Smith v. Yarrow*, 78 F. App'x 529, 543-44 (6th Cir.2003) (collecting cases)); *see also McKenna v. Lawson*, 2009 WL 481893 (W.D. Ky. 2009) (slip op.).

As to the Plaintiff's allegations of other adverse acts, *e.g.*, purported interference with his telephone reception, extreme cell temperatures, and circuitous routes to doctors' appointments, Eltayib again fails to allege that these consequences were so severe as to deter a person of ordinary firmness from continuing to engage in the protected conduct. The alleged "injuries" were, at best, *de minimus*.  Moreover, the defendants continued to treat his medical conditions.  He has, therefore, failed to allege an adverse action which rises to the level of a cognizable constitutional claim.  *See Ingraham v. Wright*, 430 U.S. 651, 674 ("There is, of course a *de minimus* level of imposition with which the Constitution is not concerned").

Even if there were any doubt about the two foregoing components, the plaintiff has not presented evidence of the third component:  causal connection between the protected activity and the adverse action.  Nor has Plaintiff provided any indication what evidence in this regard he could have produced after discovery.  *Royal Oak Entertainment, LLC v. City of Royal Oak, Michigan*, 2005 Fed Appx.389, 397-98 (6th Cir. 2006) (citing *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir.1997) ("[A] a plaintiff complaining that a district court granted summary judgment without allowing adequate discovery must, at a minimum, be

able to show that he could obtain information through discovery that would disclose material facts")).

In short, the plaintiff has failed to allege a set of facts that would support a cognizable claim of First Amendment retaliation. *Pack v. Martin*, 174 Fed.Appx. 256, 259 (6th Cir. 2006) (citing *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir.2004)). Therefore, the defendants will also be granted summary judgment on this claim.

## CONCLUSION

In response to the defendants' motion, the burden was on the plaintiff to "show affirmatively" that he has support for his allegations. He did not, however, carry this burden. The defendants have prevailed. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting Fed.R.Civ.P. 56(e) and affirming the grant of summary judgment where the prisoner-plaintiffs failed to present admissible evidence in support of their allegations); *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 458-59 (6th Cir.2004) (same). Nor did the plaintiff carry the initial burden of the movant in his own motion for summary judgment.

There is no genuine issue of material fact precluding entry of summary judgment for the defendants on all of this plaintiff's claims, and the defendants are entitled to a judgment as a matter of law. Accordingly,

**IT IS ORDERED** as follows:

(1)     Defendants' motion for summary judgment [Record No. 39] is **GRANTED.**

(2)     Plaintiff's motion to strike the defendants' notice of a restricted filing [Record No. 42] is **DENIED,** on the ground that Plaintiff later withdrew the motion.

(3)    Both parties' motions for extensions of time [Record Nos. 43, 48] are **GRANTED**.

(4)    Plaintiff's motion to dismiss Defendants Philip LaFleur, Tammy Fannin, Lynn Clemens from this action and dismiss all but one claim against Samuel Young [Record No. 45] is **GRANTED**, as voluntary and unopposed.

(5)    Plaintiff's motion for summary judgment [Record No. 47] is **DENIED** on the ground that he has failed to carry his burden as the movant.

(6)    Plaintiff's motion to withdraw his earlier motion to strike [Record No. 46] is **GRANTED**, as the withdrawal is voluntary on his part and unopposed by the defendants.

(7)    Plaintiff's motion to strike the defendants' response to his dispositive motion [Record No. 51] is **DENIED**.

(8)    Defendants' motion to correct their pleading docketed as Record No. 50, based on their having inadvertently left off the names of Borders, Cox, Carpenter, Coleman and Baker as responding in that pleading [Record No. 53] is **GRANTED**.

(9)    The defendants' motion to stay discovery [Record No. 56] and the plaintiff's motion to withdraw his discovery requests [Record No. 57] are **DENIED as MOOT**.

(10)   This action will be **DISMISSED** and a judgment shall be entered contemporaneously with this memorandum opinion and order in favor of the defendants.

21

Signed on  July 30, 2009

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY